790 NEW JERSEY MISCELLANEOUS REPORTS.

N. J. Dept. Labor—Colton v. Warren Mfg. Co.

NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

## LIZZIE W. COLTON, PETITIONER, v. WARREN MANUFACTURING COMPANY, A CORPORATION, RESPONDENT.

Employe Found Dead in an Underground Passageway Infrequently Used—Evidence Showed That Employe Had Used Passageway to Reach Pump House to do Some Repairing; That While on His Way He Had Come Into Contact With Insufficiently Protected Electric Wires, Resulting in Death— Respondent's Objection That This Evidence was Insufficient Not Sustained.

### SUMMARY OF FACTS.

The petition is filed by Lizzie W. Colton against the Warren Manufacturing Company, a corporation, for compensation, burial expenses, &c., under the provisions of the Workmen's Compensation law of New Jersey, its amendments and supplements. It is found to be a fact that Lizzie W. Colton was the wife of Harry B. Colton on July 27th, 1925, both living together, and said Lizzie W. Colton depending upon Harry B. Colton for her maintenance. Said Harry B. Colton at that time was in the employ of the Warren Manufacturing Company, working as a master mechanic at a yearly salary of $3,000. His duties were to supervise the machinery, &c., at the mills of the company, located at Milford, New Jersey. On July 27th, 1925, a pump supplying the mill did not properly operate, and Mr. Colton, going to his home at noon, told Mrs. Colton that he would go down and fix the pump. It is found as a fact that he entered the tunnel leading from the mill to the pump house, which pump house was located some distance from the mill, and beneath the level of the ground. In the tunnel leading to the pump house from the mill were a number of conduits containing charged electric wires, conveying the electric current from the engine room of the mill to the pump, and used for the operation of the

pump in the pump room. After passing from the tunnel in order to reach the pump it was necessary for a person to step down some distance from the floor level of the tunnel to the floor level of the pump house. Leading into the pump house were the conduits placed in such a position that one in entering the pump house might naturally take hold of the conduits for support in stepping from the floor of the tunnel, either to a place on top of the pump and thence to the floor of the pump house, or in rising from the floor level of the pump house to the floor level of the tunnel. Early in the evening of July 27th, 1925, the body of Mr. Colton was found on the floor of the pump house. A prompt inspection was made of the tunnel and pump house, and the conduits containing the electric wires. In the dust accumulated on the conduits mentioned above were fresh marks having the appearance of a hand and finger prints. This fact was discovered by the electrician of the defendant company, and he, being desirous of ascertaining the cause of death of Mr. Colton, proceeded to make a test of the conduits. On the conduit containing the marks of the hand and finger prints he found an electric leakage equivalent, in his judgment, to one hundred and ten volts. Shortly after the body was found a scar was observed on the left hand, and it was established the scar was not there shortly before the death.

OPINION.

The respondent employer, upon the discovery of the body of Harry B. Colton, became suspicious of the cause of death, and made a real effort to find the cause. The discovery of the hand and finger prints on the dusty conduits was the reason for the test of the conduit. The conduit was defective as it allowed electricity, presumably to the extent of one hundred and ten volts, to escape. My inquiry into this question convinces me that this leakage is sufficient to cause death under certain conditions, and I am impressed with the fact that these conditions, one of which constitutes a good

grounding of the current, were here present. One could hardly arrange a better grounding than an iron pump connected by piping to the general water system of the plant. It must be borne in mind that an intensity of shock which might stun one person might be fatal to another. The duration of the exposure is also an important element. Experts, versed in such matters, are aware that an exposure of a fraction of a minute will result far more disastrously than one of a much higher voltage in which the contact be only an instantaneous one.

Strenuous objection was made by counsel for the defense to all testimony relative to the disturbed dust on the conduit pipe, but the testimony of employes at the plant is convincing that this spot was one practically never visited by anyone unless obliged to go there. Proof that the marks of disturbed dust were made by Mr. Colton may be impossible, but this fact is patent. The electrician's testimony indicated that deterioration of the insulation on the wire in the conduit resulted in the short circuit he found. The short circuiting condition resulted gradually and must have been present for some little time. The disturbing of the dust was recent, and if not done by Mr. Colton, then someone else must have had an experience with this conduit, and it is but reasonable to conclude that the matter would have been reported. The absence of any knowledge of this condition is too significant to be disregarded.

Taking the whole picture under observation, comprising a pump well or basement, a tunnel leading therefrom with entrance approximately four feet above the floor, a pump with a convenient stepping place about two feet high, an iron conduit, shoulder high, available as a hand hold, a short-circuited current in this conduit, a lifeless body on the floor of the pit with unnatural markings across the palm, reviewing this picture in detail I am unable to escape the conclusion that it is entirely reasonable to infer that the deceased came to his death as the result of an electric shock, arising out of and in the course of his occupation. Such an assumption is not only reasonable but seems almost imperative.

ORDER.

It is ordered and directed that the defendant, Warren Manufacturing Company, a corporation, do pay to the petitioner, Lizzie W. Colton, the sum of $17 a week for a period of three hundred weeks from July 27th, 1925; that an additional sum of $150 be paid by the defendant, Warren Manufacturing Company, to complainant, this being the sum provided by statute for the funeral expenses incurred by the petitioner in the burial of the said Harry B. Colton; and said Warren Manufacturing Company shall also pay to William E. Cooper, as counsel for said Lizzie W. Colton, the sum of $200 as counsel fee, and the further sum of $19.15 for subpœnas and witness fees.

W. E. STUBBS,
*Deputy Commissioner.*